UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SILVAN LEWIS,

Plaintiff,

-vs-                                                        Case No.  6:07-cv-1326-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Silvan Lewis ("Lewis") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits.  *See* Doc. No. 1 ("Complaint"). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I.      **BACKGROUND**

Lewis was born April 28, 1945.  R. 70.  On April 27, 2005, the date of Lewis's alleged onset of disability, he was fifty-nine (59) years of age.  R. 70.  Lewis completed high school and two years of college courses.  R. 344-45.  Lewis's past relevant work experience includes being employed as a commercial truck driver for fifteen years.  R. 63, 345.

On April 19, 2005, Lewis was examined by Jermania Estevez, M.D., complaining of being tired and weak for the past two months with numbness on both arms and hands.  R. 160. On April 22, 2005, Lewis was admitted to Orlando Regional Medical Center ("Orlando Regional") complaining of "shortness of breath and chest discomfort with activity, markedly

abnormal electrocardiogram ["EKG"] of A-V blocks and diffuse ST-T wage changes of strain pattern." R. 94-5.   Lewis was diagnosed with a "high-degree of atrioventricular blocks, junctional escape rhythm", Type II diabetes mellitus (herein referred to as "DM") and chest pain syndrome.   *Id.*   He underwent an implantation of a dual-chamber pacemaker for "symptomatic complete heart block and Mobitz type II A-V block." *Id.*

On May 3, 2005, Lewis was examined by Mildred Trevett, M.D., for a physical following his pacemaker surgery.  R. 157-59.   On May 5, 2005, he returned to Dr. Trevett for a second check-up.  R. 154-56.  Dr. Trevett indicated that Lewis's DM was controlled and she discussed concerns about exercise and a proper diet.  R. 155-56.   On May 10, 2005, Lewis returned to Orlando Regional complaining of swelling with minor erythema over his left pectoral wound and noting mild discomfort.  R. 104.   Aurelio Duran, M.D., suspected an early pacemaker infection. R. 105.   Lewis was admitted to Orlando Regional and underwent a pacemaker extraction and pacemaker pocket debridement.  R. 105-16.   Following three days of testing, yeast and gram-variable bacilli were identified.  R. 109.

On May 13, 2005, Lewis protectively filed an application for supplemental security income, alleging disability as of April 27, 2005. R. 70.  On May 24, 2005, Lewis returned to Dr. Trevett for a follow-up visit and was diagnosed with chronic renal failure and DM.  R. 151-53. Cardiomegaly with atherosclerotic vascular disease was noted.  R. 132.

On June 1, 2005, Lewis was admitted to Florida Hospital for a second pacemaker implant performed by Peter Y. Cheung, M.D.  R. 127-33.   On June 9, 2005, Lewis underwent a cystoscopy and right retrograde pyelogram.  R. 189-90.   He was diagnosed with bilateral hydronephrosis. R. 189.  Alex W. Anderson, IV, M.D., noted the following findings:

> Ureteral-renal strictures, prostatic urethra revealed a question of previous TURP [Transurethral Electro-Resection of the Prostate].  The bladder revealed rather severe trabeculation especially in the trigone area.  There was significant alteration of the anatomy and it appears that there may have been prior surgery in the aria of ureteral orifices.

R. 189.  On July 1, 2005, Dr. Trevertt referred Lewis to Sand Lake Imaging ("SLI") wherein it was indicated by the interpreting radiologist, Robert A. Posniak, M.D., that right renal calculus (kidney stone) was suspected; possible bilateral ectasia of the collecting systems; and a 2.0 cm of inhomogeneiry which should be excluded. R. 171.  On July 25, 2005, Lewis returned to SLI and received the following impression by interpreting radiologist, Stephen M. Bravo, M.D.:

1. Severe bilateral hydroureteronephrosis without ureterolithiasis.  Obstructive uropathy is present as described above.  There are findings consistent with associated abnormal bladder mass, worrisome for transitional cell carcinoma.  Clinical correlation is advised.
2. Nonspecific prominence to the seminal vesicles.  The prostate gland appears unremarkable.

· · ·

1. Splenic artery ancurysm as described.
2. No evidence for pancreatic head or peripancreatic mass to correspond to the abnormality visualized on the ultrasonography.
3. Severe bilateral hydroureteronephrosis without radiodense ureterolithiasis.  There is a 4 mm focus of radiodense urolithiasis in the right collecting system as described.
4. 5 mm left renal cyst.

R. 168-69.  On July 26, 2005, Dr. Anderson noted that Lewis was asymptomatic, except for a decreased urine flow. R. 280.  He indicated that both kidneys had preserved function bilaterally. *Id.*

On August 9, 2005, a physical residual functional capacity ("RFC") assessment was completed by a non-examining physician wherein it was indicated that Lewis could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; he could stand and/or walk

3

for a total of about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday and push and/or pull without limits. R. 135. No other limitations were provided and it was noted that Lewis's symptoms were partially credible based on the evidence of record. R. 134-41.

On October 25, 2005, Dr. Trevett indicated that Lewis suffered from hypertension due to his poor dietary compliance and not taking the prescribed blood pressure medication. R. 147. On November 1, 2005, Dr. Trevett noted that Lewis was not compliant with the prescribed diet, which caused his DM to be uncontrolled. R. 142. Lewis stated he needed sweets due to his bad economical shape. *Id.* Dr. Trevett also assessed Lewis with benign essential hypertension and diabetic nephropathy[1]. R. 144.

On November 21, 2005, Lewis presented to the Osceola County Health Department ("OCHD") complaining of dizziness, weakness and pain at his pacer site. R. 211. He was out of his insulin. *Id.* Lewis was diagnosed uncontrolled DM, dizziness, fatigue, chestwall pain, arrhythmia, and benign hypertension. *Id.* On December 9, 2005, OCHD records indicate that Lewis was not following ADA (American Diabetes Association), but he understood all risks. R. 209. The notes indicate "medical noncompliance". *Id.* On January 26, 2006, Lewis returned to OCHD complaining of headaches, blurred vision, and sharp needle pain in both feet. R. 208. Again, the record indicates that Lewis was not compliant with the ADA recommendations. *Id.*

On March 7, 2006, Glenn Bigsby ("Bigsby"), a non-examining state agency consultative physician, completed a physical residual functional capacity ("RFC") assessment. R. 219-26. He indicated Lewis could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; he could stand and/or walk for a total of about 6 hours in an 8-hour workday, sit for a

---

[1] Diabetic nephropathy is a progressive kidney disease due to longstanding diabetes mellitus.

total of about 6 hours in an 8-hour workday and push and/or pull without limits.  R. 220.  No other limitations were provided and Bigsby indicated that Lewis's symptoms were partially credible based on the objective findings.  R. 224.

On November 23, 2006, Lewis was seen at South Lake Hospital complaining of high blood pressure and he was without medication. R. 263.  Lewis was provided assistance information and that Wal-Mart had the medication available for $4.00.  R. 348.

On December 6, 2006, the Honorable Jimmy N. Coffman, Administrative Law Judge [the "ALJ"] held a hearing on Lewis's disability claim in Orlando, Florida.  R. 341-51.  Attorney Evelyn Pabon represented Lewis at the hearing.  R. 341.  Lewis was the only person to testify. *Id.*  At the hearing, Lewis testified to the following:

- He stopped working for Sterling Silver because the company found him incapable of performing his normal duties.
- In September 2005, after trying to go back to work, the company decided that he might be a liability to the company.
- He is currently taking Prinivil for his heart condition, which is the only treatment aside from the pacemaker.
- He cannot afford the medicine to treat his blood pressure and has been without for the past three months. Side effects are blurred vision and headaches.
- He takes insulin, Humulin and Humlin R for his diabetes.
- He then testified that he received insulin from OCHD and obtained his blood pressure medicine at Wal-Mart for $4.00.
- He washes the dishes and helps his sister cook, and he takes his sister or her daughter to the store.

R. 341-51.

On March 12, 2007, Lewis was evaluated at South Lake Hospital complaining of chest pain and hypertension. R. 327.   An echocardiogram revealed "concentric left ventricular hypertrophy with mild left ventricular enlargement and preserved left ventricular systolic function at around 55%." *Id.*  The diagnosis was mild cardiomegaly.  R. 329.

5

On February 27, 2007, the ALJ issued a decision that Lewis was not disabled finding the following:

1.   Lewis has not engaged in substantial gainful activity since April 27, 2005, the alleged onset date.

2.   The medical record reveals that Lewis has the following impairments that are "severe": heart problems, diabetes, and hypertension.

3.   Lewis does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

4.   After careful consideration of the entire record, Lewis has the RFC to lift and/or carry of up to 50 pounds occasionally and 25 pounds frequently. He is able to sit, stand and/or walk for at least a total of 6 hours per eight hour workday.

5.   Lewis's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

6.   Lewis is capable of performing his past relevant work as a truck driver.

7.   Lewis has not been under a disability since May 13, 2005, the date his application was filed.

R. 14-19.   On February 27, 2007, Lewis requested review by the Appeals Council (R. 8), and on June 23, 2007, the Appeals Council denied review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.  R. 4-6.

On August 23, 2007, Lewis timely appealed the Appeals Council's decision to the United States District Court.  Doc. No. 1.   On January 14, 2008, Lewis filed a memorandum in support of his appeal.  Doc. No. 13.  On March 14, 2008, the Commissioner filed a memorandum in support of his decision that Lewis was not disabled.  Doc. No. 14.  On July 28, 2008, the parties

6

consented to the jurisdiction of a United States Magistrate Judge.  Doc. No. 18.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Lewis assigns two errors to the ALJ.  First, Lewis claims that the ALJ erred by not ordering a consultative examination.  Second, Lewis argues that the ALJ erred by finding his testimony not fully credible.  The Commissioner argues that the ALJ properly determined Lewis's RFC and that he was fully capable of performing his past relevant work.  The Commissioner also maintains that the ALJ did not err in evaluating Lewis's credibility.

## III.   LEGAL STANDARDS

### A.   THE ALJ'S STANDARD FOR DETERMINING DISABILITY

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in

the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider

properly.  *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)").  20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's residual functional capacity ("RFC").  20 CFR §§ 404.1520(e), 416.920(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by

9

the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).   If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.   In addition, the work must have lasted long enough for the clamant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

In the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.   In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the

claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.    THE COURT'S STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

IV.     **ANALYSIS**

A.      **Whether the ALJ Erred By Not Ordering a Consultative Examination.**

Lewis argues that "[t]he ALJ erred in not ordering a consultative examination when the record shows the claimant had an extensive history of heart [problems], kidney [problems], and diabetes resulting in significant limitations, but there was no [RFC] from any examining physician."  Doc. No. 13 at 7.  Relying on *Reeves v. Heckler*, 734 F.3d 519, 522 n. 1 (11th Cir. 1984) and 20 C.F.R. § 404.1517, Lewis maintains that it is reversible error for an ALJ not to order a consultative examination where one is necessary for him to make an informed decision.  Doc. No. 13 at 9.  According to Lewis, in order for an ALJ to fulfill his duty to develop the record, once the ALJ was made aware of Lewis's conditions, he was required to obtain a consultative examination.  Doc. No. 13 at 9-10.

The Commissioner maintains that Lewis bears the burden of providing evidence that he is disabled and cannot perform his past relevant work.  Doc. No. 14 at 3-4.  The Commissioner acknowledges that an ALJ has a basic obligation to fully develop the record, but the Commissioner argues that an ALJ is not required to order a consultative examination unless the record establishes that one is necessary for the ALJ to render an opinion.  Doc. No. 14 at 5 (*citing Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988)).   The Commissioner states that consultative examinations are only necessary when additional evidence is necessary for the ALJ to make a determination as to the issue of disability because there is a conflict, inconsistency, ambiguity, or other insufficiency in the evidence that must be resolved.  Doc. No. 14 at 5-6 (*citing* 20 C.F.R. §§ 416.919a(b)(1), 416.919a(b)(4)). According to the Commissioner, the medical evidence was sufficiently developed and no conflict, inconsistency or ambiguity

12

existed in the record that would have required the ALJ to order a consultative exam.  Therefore, the Commissioner argues that the ALJ did not err.

It is well settled in the Eleventh Circuit that the ALJ has a duty to develop a fair and full record.  *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984).  However, "'[i]n fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.'"  *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (*quoting Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. Unit B Oct. 15, 1981)); *see also Good v. Astrue*, 240 Fed. Appx. 399, 404 (11th Cir. 2007) ("As this court has explained, the ALJ need not order an additional consultative examination where the record was sufficient for a decision."); 20 C.F.R. § 404.1517.  While the ALJ is responsible to "make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination" as to disability, it is the claimant's burden to prove he is blind or disabled.   *Kilcrease v. Barnhart*, 347 F.Supp.2d 1157, 1161 (M.D. Ala. 2004); *see also* 20 C.F.R. § 404.1512(a).[2]

Lewis is correct that the *Reeves* court held that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."  734 F.2d at 522 n. 1.  However, *Reeves* did not hold that whenever an ALJ is made aware of a claimant's condition that a consultative examination is automatically required. *Id*.  Rather, it is only where a consultative examination is necessary for the ALJ to

---

[2] "In general, you have to prove to [the Commissioner] that you are blind or disabled.  Therefore, you must bring to our attention everything that shows that you are blind or disabled.  This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis." 20 C.F.R. § 404.1512(a).

make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination.   20 C.F.R. §§ 404.1519(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists.  We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.").   For instance, in *Reeves*, the ALJ erred by failing to order a consultative examination where the consulting non-examining physician recommended that consultative examination was necessary to determine whether certain therapies might help alleviate the claimant's pain.  734 F.2d at 522. In the instant case, none of the non-examining state agency physicians recommended that a clinical examination was necessary.  *See Good*, 240 Fed.Appx. at 404 (". . . no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination [regarding disability].").

The ALJ provided a detailed description of the relevant medical evidence concerning Lewis's severe heart problems, DM, and kidney problems.  R. 14-18.  The medical record, while indicating that Lewis does have severe impairments, does not contain any evidence that those impairments cause significant limitations resulting in disability.   On June 1, 2005, Lewis received a second pacemaker implant (R. 127-133) and, other than complaints of pain around the pacemaker site and a diagnosis of mild cardiomegaly (enlargement of the heart), no debilitating evidence is contained in the record.  R. 211, 327-329.  On July 26, 2005, Dr. Anderson noted that

14

Lewis's kidneys were now asymptomatic and had preserved function bilaterally.  R. 280.   The record indicates that Lewis continued to suffer from severe symptoms relating to DM, but also indicates that Lewis was not compliant with his medication or recommended diet.  R. 142, 147, 208-09.  The only evidence of any limitations in the medical record is from two non-examining state agency consultants who provided RFC's which found no significant limitations to compel a finding of disability.  R. 134-41, 219-216.[3]  The medical record is complete, and Lewis has not argued that there are records missing from any treating physician.  Based on the complete record, there was no insufficiency, ambiguity or conflict that would have required the ALJ to order a consultative examination under the regulations.   Lewis was represented by counsel at the hearing, but the record fails to contain any request by Lewis or anyone else for consultative examination.   In his memorandum to this Court, Lewis does not state why a consultative examination is necessary or what insufficiency, conflict, or ambiguity in the evidence a consultative examination would address.   Rather, Lewis argues that that the ALJ's failure to order a consultative examination is reversible error.   Doc. No. 13 at 10.   After carefully reviewing the medical evidence of record as detailed above, the Court finds that there was substantial evidence in the record for the ALJ to make a disability finding without the need to order a consultative examination.

**B.      Whether the ALJ Erred In Finding Lewis's Testimony Not Fully Credible.**

Lewis argues the ALJ's determination that his subjective testimony was "not fully credible" is not supported by substantial evidence.  Doc. No. 13 at 10-12.  "The ALJ did not make accurate and specific findings as to credibility of Plaintiff, thereby amounting to a failure

---

[3] Lewis's testimony provided evidence of substantial limitations; however, as explained in section B, the ALJ properly determined that Lewis's testimony was not fully credible.

in developing a full and fair record." *Id*. at 12.  Additionally, Lewis argues that the ALJ's credibility finding should not have been influenced by Lewis's non-compliance with taking his medication because Lewis's non-compliance was due to his inability to afford the medication. Doc. No. 13 at 11 (*citing Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)).  The Commissioner argues that the ALJ properly applied the Eleventh Circuit's pain standard regarding Lewis's allegations of disabling pain, fatigue, and other symptoms.  Doc. No. 14 at 10-12.  The Commissioner also maintains that the record does not reflect that Lewis had problems with affording or obtaining his medications.  Doc. No. 14 at 11.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

16

The ALJ decision regarding Lewis's subjective testimony stated the following:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> . . .
>
> At the hearing, the claimant testified that he lives with his sister in a house, has no income, and no food stamps. The claimant testified that he was a Tractor Trailer Driver. . . . He said he had no other work except driving tractor trailers. He said he stopped working in September 2005. He said he was left [sic] go in April of 2005 because he could no longer do the lifting. The claimant testified that he has a slow heart beat and he was given a pace maker and then his health began to fail. He stated that [he] has diabetes, high blood pressure, blurred eyesight, headaches, and fatigue. He said he gets headaches daily and has pain where the surgical scar is. The claimant stated that he takes insulin for his diabetes. He said that his limitations are sitting for 1 ½ hour, stand[ing] for 20 minutes, walk[ing] for one block, and lift[ing] 10 pounds. He said he has difficulty reading due to diabetes. The claimant testified that he is able to drive. He stated he sometimes goes to the grocery store with his sister. As for his personal needs, he said [he] is okay. The claimant testified that he washes the dishes, and sometimes helps with the cooking. He said he wakes up and has a cup of tea, watches television, goes outside and checks the mail, and likes to play dominoes. He said he has difficulty sleeping due to cough.
>
> . . .
>
> After careful consideration of the entire record, the undersigned finds no evidence to support a finding of total disability based on any physical impairment. At the hearing, the claimant testified that he is able to drive, goes to the grocery store with his sister, is able to care for his personal hygiene, washes the dishes, and sometimes helps with the cooking. He said he wakes up and has a cup of tea, watches television, goes outside to check the mail, and likes to play dominoes. Although the claimant was diagnosed with a heart problem, he has received treatment. He had a pacemaker implanted on April 22, 2005. He was then followed up for the pacemaker implant at the Orlando Heart Center where the doctor suspected an early pacemaker infection on May 10, 2005. The

17

> claimant underwent dual chamber pacemaker extraction on May
> 16, 2005, and on June 1, 2005, the claimant underwent right side
> dual-chamber pacemaker implant.  The claimant was followed up
> on his pacemaker on January 30, 2006, and was informed of
> normal pacer findings.  There is evidence that the claimant has not
> been entirely compliant in taking prescribed medications, which
> suggests that the symptoms may not have been as limiting as the
> claimant has alleged in connection with this application.
> Accordingly, the undersigned concludes that the claimant's
> allegations and subjective complaints are out of proportion and
> inconsistent with the medical evidence and are not fully credible.

R. 17-18.  The ALJ stated specific and adequate reasons to support his credibility finding regarding the severity and persistence of Lewis's symptoms and substantial evidence supports his finding.  At the hearing, Lewis testified that he could not afford his medication.  R. 347.  However, Lewis also testified that the Osceola Clinic gives him his insulin and he can fill his high blood pressure prescriptions at Wal-Mart for $4.00. R. 348.   Dr. Trevett's records repeatedly reveal that Lewis was not compliant with his diet and was not taking his blood pressure medication which caused his symptoms to be uncontrolled. R. 142, 147.  Dr. Trevett's notes also reveal that Lewis stated he was not compliant with his diet because he needed sweets.  *Id*.  Additionally, OCHD records indicate that Lewis was not compliant with his recommended treatment.   Thus, the ALJ had substantial evidence to determine that Lewis's subjective complaints were out of proportion and inconsistent with the medical evidence and not fully credible.  *Ellison v. Barnhart*, 355 F.2d 1272, 1275 (11th Cir. 2003) (holding that an ALJ may properly consider a claimant's noncompliance with medical advice and treatment in evaluating a claimant's credibility).  Therefore, the ALJ's credibility determination is affirmed.  *Bowen*, 786 F.2d at 1054 (holding that a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court).

V.      **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.   The

Clerk is directed to enter **JUDGMENT in favor of the Commissioner and close the case**.

**DONE and ORDERED** in Orlando, Florida on September 25, 2008.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Shea A. Fugate
Law Office of Shea Fugate
1800 Pembrook Dr., Suite 300
P.O. Box 940989
Maitland, Florida        32794

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Edward Jimmy N. Coffman
c/o Social Security Administration
Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, Florida        32817-9801